IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROLINE WILKINSON, Petitioner | : | CIVIL ACTION |
| | : | |
| v. | : | No. 19-2489 |
| | : | |
| DEPARTMENT OF VETERANS AFFAIRS and STEVEN LIEBERMAN, M.D., VA Principal Deputy Under Secretary for Health, Respondents | : : | |

### MEMORANDUM

**Juan R. Sánchez, C.J.**                                                                                           **March 26, 2021**

Petitioner Caroline Wilkinson brings this administrative appeal against Respondents Department of Veterans Affairs and Steven Lieberman (collectively, the VA) regarding her termination from the VA Medical Center in Philadelphia (Philadelphia VAMC). The parties have filed cross-motions for summary judgment asking the Court to determine whether the VA's decision to terminate Wilkinson was lawful. Wilkinson argues her removal should be overturned because the Disciplinary Appeals Board's decision to uphold certain charges against her was arbitrary, capricious, and unsupported by substantial evidence. Further, Wilkinson asserts her removal was improper because the DAB failed to follow necessary procedures when it did not consider the *Douglas* Factors in determining an appropriate penalty based on the charges. Because the DAB's decision to terminate Wilkinson was not arbitrary and capricious, was supported by substantial evidence, and followed the proper procedures, the Court will deny Wilkinson's motion and will grant the VA's motion.

**BACKGROUND**

Petitioner Caroline Wilkinson is a Registered Nurse who has been employed by the VA since March 2014 and has been an employee at the Philadelphia VAMC since January 2017. At

all times relevant to this case, Wilkinson was a full-time, permanent employee with the Philadelphia VAMC who had been appointed pursuant to 38 U.S.C. § 7401(1).

On November 21, 2018, Coy Smith, the Philadelphia VAMC's Associate Director of Patient Care Services/Nurse Executive, sent a letter to Wilkinson recommending her removal. The proposed removal was based on six charges: (1) Patient Abuse; (2) Failure to Provide Proper Care; (3) Failure to Safeguard Confidential Patient Information; (4) Failure to Follow Policies and Procedures; (5) Conduct Unbecoming of a Federal Employee; and (6) Workplace Harassment.[1] The letter also outlined Wilkinson's right to reply to the charges both orally and in writing. In response, Wilkinson and her counsel requested a meeting with the Acting Director of the Philadelphia VAMC, Daniel Hendee, who was the deciding official on her removal.

On November 30, 2018, Wilkinson and her counsel met with Hendee and described the mitigating circumstances surrounding the charges, arguing Wilkinson should be transferred rather than removed. In addition to her oral reply through counsel at the meeting, Wilkinson submitted a written reply. Following the meeting with Wilkinson, Hendee sustained all of the proposed charges and terminated Wilkinson effective December 13, 2018.

Wilkinson timely appealed her termination to Steven Lieberman, the VA's Principal Deputy Under Secretary for Health, and requested a formal hearing before a Disciplinary Appeals Board (DAB). On December 14, 2018, a DAB of three VA medical professionals was appointed to consider Wilkinson's appeal, and a pre-hearing conference call was held on January 24, 2019.

---

[1] In her Motion for Summary Judgment, Wilkinson only challenges Charge 1, Charge 3, and Charge 4, Specification 2, as being arbitrary, capricious, and unsupported by substantial evidence. She does not dispute that she engaged in conduct unbecoming of a federal employee or that she improperly removed a patient from a telemetry monitor. Rather, Wilkinson argues the DAB failed to take into consideration the "Douglas Factors" and other mitigating factors when it upheld her termination based on these charges.

During this call, the DAB explained that, because the DAB is not a court of law, it is not bound by the Rules of Evidence and would admit hearsay evidence. The DAB also discussed the appeals process. Since neither the VA nor Wilkinson offered Wilkinson as a witness, the DAB stated it would call Wilkinson as a witness itself.

Starting on February 5-7, 2019, the DAB held a three-day hearing regarding Wilkinson's removal. The DAB heard opening and closing arguments from both sides and testimony from nine witnesses, all of whom were subject to cross-examination. Because Wilkinson was not called as a witness by either party, the DAB led her direct examination. On or about March 18, 2019, the DAB sustained the following five charges: (1) Patient Abuse; (2) Failure to Provide Proper Care; (3) Failure to Safeguard Confidential Patient Information; (4) Failure to Follow Policies and Procedures; and (5) Conduct Unbecoming a Federal Employee. Based on these charges, the DAB recommended Wilkinson's removal be upheld. Lieberman approved the DAB's decision upholding Wilkinson's removal and advised Wilkinson of his decision in an April 22, 2019, letter. On June 7, 2019, Wilkinson filed a petition for review of the VA's order. On March 13, 2020, the parties filed the instant cross-motions for summary judgment.

**DISCUSSION**

The Court will deny Wilkinson's motion for summary judgment and grant the VA's motion because the DAB did not act arbitrarily or capriciously, did not abuse of its discretion, and obtained the action within the procedures required by law and with the support of substantial evidence.. A VA employee appointed under 38 U.S.C. § 7401(1) may appeal a DAB decision in federal district court. *See* 38 U.S.C. § 7462(f)(1). Summary judgment is the appropriate mechanism for deciding whether the VA's action was appropriate. *See Uddin v. Mayorkas*, 862 F. Supp. 2d 391, 399 (E.D.

Pa. 2012) (citation omitted). However, "the usual summary judgment standard does not apply." *Id.* at 399–400 (quotation marks and citation omitted). Instead, the district court shall:

> review the record and hold unlawful and set aside any agency action, finding, or conclusion found to be be[:] (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) obtained without procedures required by law, rule, or regulation having been followed; or (C) unsupported by substantial evidence.

38 U.S.C. § 7462(f)(2). "The scope of review under the 'arbitrary and capricious' standard is 'narrow, and a court is not to substitute its judgment for that of the agency.'" *CBS Corp. v. FCC*, 663 F.3d 122, 137 (3d Cir. 2011) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)). In reaching its decision, the agency must have "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choices made.'" *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 158 (1962)).

> An agency's action will be found to be arbitrary and capricious when:
> the agency has relied on other factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*State Farm*, 463 U.S. at 43 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). Additionally, an agency action must be based upon "substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the

evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Ginsberg v. Richardson*, 436 F.2d 1146).

Wilkinson argues Charge 1, Charge 3, and Charge 4, Specification 2 should be overruled because the rulings of the DAB were arbitrary, capricious, and unsupported by substantial evidence. Specifically, Wilkinson asserts the DAB relied upon improper hearsay, ignored relevant evidence, and failed to address possible witness bias when it upheld the charges. The Court will address each Charge in turn.

First, the DAB's decision to uphold Charge 1 (Patient Abuse) was not arbitrary, capricious or unsupported by substantial evidence. Charge 1 alleges Wilkinson committed patient abuse during an incident in which a patient fell while Wilkinson was tasked with the patient's one-on-one care. On August 8, 2018, Wilkinson was assigned to cover "Patient G" on a one-to-one basis because Patient G was a fall risk. On one occasion, while helping the patient eat lunch, Wilkinson helped the patient sit upright on the side of his bed. Wilkinson then left the room, and when she returned, she discovered Patient G had fallen off the bed. At this time, Robert LaPointe, another registered nurse at the Philadelphia VAMC, came to assist Patient G back into bed. Patient G then expressed his displeasure with Wilkinson's care throughout the day. LaPointe testified that, while speaking with Patient G, he saw Wilkinson "standing near the door gesturing to [Patient G] with [her] finger pointing at him, with [her] teeth gritted, in a manner that made [LaPointe] think [Wilkinson] was trying to tell [Patient G] to be quiet." A.R. 475:1-7, 485:12-24, 486:1-20. LaPointe asked Wilkinson to step into the hallway, and after multiple requests by LaPointe, Wilkinson left the room. A.R. 469:1-5, 470:1-8, 472:1-10, 474:15-24.

Under VA policies, Patient Abuse includes "intimidation, harassment, or ridicule of a patient." A.R. 249-50 (VAMC Memorandum 00-39). Wilkinson was charged with providing care

5

in direct conflict with these standards. In deciding to uphold Charge 1, the DAB primarily relied on the testimony and written statement of LaPointe. A.R. 5. The DAB found LaPointe to be credible based on testimony from Associate Director Coy Smith and Director Daniel Hendee, who described LaPointe's excellent professional reputation. *Id*. Further, the DAB noted LaPointe's testimony was consistent with his written statement and closely matched the written statement of Patient G. *Id*. Based on the record before it, the DAB concluded Wilkinson's behavior met the definition of "Patient Abuse" in VAMC Memorandum No. 00-39 because Wilkinson's actions constituted "intimidation, harassment, or ridicule of a patient." *Id.*

Wilkinson argues the DAB failed to consider the bias of Tonya Crittenden, the compiler of Patient G's written report, ignored Patient G's inability to accurately recollect the events of August 8, 2018, and gave undue weight to LaPointe's perception of the events when he did not have a proper vantage point. Pet.'s Mot. 4-5, ECF No. 13. In other words, Wilkinson argues the DAB improperly found the testimony of LaPointe and written statement of Patient G to be a more credible description of the events than Wilkinson's own testimony. However, such a credibility determination is within the DAB's authority and does not constitute an abuse of discretion. *See CBS Corp. v. FCC*, 663 F.3d 122, 137 (3d Cir. 2011) ("[A] court is not to substitute its judgment for that of the agency."). Wilkinson further argues the DAB improperly relied exclusively on hearsay in general and specifically, Patient G's statement. Pet.'s Mot. 4, ECF No. 13. As an initial matter, the DAB is permitted to rely on hearsay, and hearsay evidence can constitute substantial evidence. *See Echostar Communs. Corp. v. FCC*, 292 F.3d 749, at 753 (D.C. Cir. 2002) ("There is no support for [petitioner's] claim that uncorroborated and untested testimony and hearsay testimony cannot constitute substantial evidence."). Regardless, the record demonstrates the DAB did not rely exclusively on hearsay in sustaining the charge against Wilkinson. On the contrary,

the DAB explicitly relied on LaPointe's testimony, finding it corroborated Patient G's statement. A.R. 5. The DAB did not consider any inadmissible evidence. It assigned evidentiary weight in accordance with the testimony it heard and credibility decisions it made. In deciding to sustain Wilkinson's termination, the DAB reviewed the entire record before it. The DAB's decision was therefore not arbitrary, capricious, or unsupported by substantial evidence.

Next, the DAB's decision to uphold Charge 3 and Charge 4, Specification 2 was not arbitrary, capricious, or unsupported by substantial evidence. Both charges deal with allegations that Wilkinson left her medication cart and its computer screen unattended and unlocked. On May 18, 2018, Wilkinson was assigned to dispense medication on the sixth floor of the Philadelphia VAMC. At some point, Wilkinson walked away from her medication cart, leaving the drawers unlocked and unattended and her personal identification card in the cart's card reader. Charge 3 alleges this conduct amounted to a failure to safeguard confidential patient information, while Charge 4, Specification 2 alleges a failure to follow policies and procedures. At the hearing and in her briefing, Wilkinson stated she only stepped away from her cart to take a work-related phone call and the cart was within her line of sight at all times.

The DAB upheld Charge 3 (Failure to Safeguard Confidential Patient Information) based on its finding that Wilkinson provided inconsistent responses in her written statement, investigative interview, and hearing testimony regarding whether the cart was within her line of sight at all times. A.R. 7-8. Additionally, the DAB relied on testimony from Assistant Nurse Manager Keenya Eubanks, who testified that Wilkinson left her cart twice on May 18, 2018, and Eubanks moved the cart without Wilkinson taking notice on both occasions. A.R. 7. Based on this testimony, the DAB found Wilkinson could not have maintained adequate security of the confidential patient information in her care. A.R. 8. Because walking away from her medication

7

cart was prohibited by the Philadelphia VAMC's "Administration of Medications" policy, the DAB upheld Charge 4 (Failure to Follow Policy and Procedures), Specification 2 based on the same evidence. *Id.*

Wilkinson argues this decision was arbitrary, capricious, and unsupported by substantial evidence because Eubanks's testimony was implausible, the DAB failed to address potential witness bias, and the DAB failed to reconcile why Wilkinson would admit to certain other charges but would dispute the allegations in these charges. Pet.'s Mot. 5, ECF No. 13. As before, Wilkinson appears to be arguing the DAB was wrong to credit evidence that contradicted Wilkinson's testimony. As previously stated, the DAB is in the best position to make credibility determinations, and "a court is not to substitute its judgment for that of the agency." *CBS Corp.*, 663 F.3d at 137. When making its decision to uphold the charges, the DAB considered the conflicting testimony of Wilkinson and Eubanks and determined Eubanks was a more credible witness given the surrounding facts of the case. A.R. 7-8, 10. Nothing in the record shows this determination was improper. The DAB's decision was therefore not arbitrary, capricious, or unsupported by substantial evidence.

Though Wilkinson does not dispute any of remaining charges against her, she argues the DAB failed to follow proper procedures when it failed to consider the *Douglas* Factors, a required consideration in some federal employment disciplinary proceedings. Wilkinson further argues the DAB violated procedures by failing to take into account "unusual job tensions, personality problems, mental impairments, harassment, bad faith, and the malice and provocation on the part of others involved in the matters – especially that of Tonya Crittenden in reaching its determination." Pet.'s Mot. 6, ECF No. 13.

The Court finds the DAB followed proper procedures because the *Douglas* Factors are not binding on the DAB, and the DAB reviewed all of the evidence, including exhibits and testimony from Wilkinson, before upholding her removal. The *Douglas* Factors are a set of factors to consider in determining an appropriate penalty in employment actions that derives from a Merit Systems Protection Board (MSPB) case under Title 5. *See Douglas v. U.S. Postal Service*, 5 M.S.P.B. 280, 305 (1981). While this standard is binding on MSPB panels, the DAB was not required to consider those factors here. *See Kreso v. McDonald*, 631 Fed. Appx. 519, 524 (10th Cir. 2015) (affirming "the *Douglas* factors are not binding on the DAB"). The lone case cited by Wilkinson, *Martin v. Dep't of Veterans Affairs*, 2017 WL 3841895 (S.D. W. Va. Sept. 1, 2017), notes that the VA had weighed the *Douglas* factors in determining whether to mitigate a penalty, but *Martin* does not hold that such factors are binding on DABs operating under Title 38. Further, 38 U.S.C. § 714 renders the *Douglas* factors immaterial when removals are based on substantial evidence, stating "if the decision of the Secretary [to remove an employee] is supported by substantial evidence, the administrative judge shall not mitigate the penalty." 38 U.S.C. § 714(d)(2); *see also Hairston v. Dep't of Veterans Affairs*, 761 Fed. Appx. 1005, 1008 (Fed. Cir. 2019) (rejecting the argument that agency erred by failing to conduct a mitigation analysis under *Douglas* where the charge was supported by substantial evidence).

Here, the deciding official on Wilkinson's removal, Daniel Hendee, considered Wilkinson's oral and written arguments as well as her "years of service," "past work record," and "mitigating and extenuating circumstances" before concluding "that the sustained charge[s] against [her] are of such gravity that mitigation of the proposed penalty is not warranted." A.R. 17. In sustaining these charges, the DAB reviewed the entire record, including Wilkinson's arguments, testimony, and evidence, and determined removal was appropriate. Viewing the record

as a whole, the DAB determined Wilkinson's "repeated lack of compliance with established facility policies" and a "lack of ownership of her actions" warranted removal. A.R. 12. Given the consideration of these factors, the DAB's decision to uphold Wilkinson's removal was supported by substantial evidence, rendering the *Douglas* factors irrelevant under 38 U.S.C. § 714.

**CONCLUSION**

In conclusion, because the DAB's decision was not arbitrary, capricious, an abuse of its discretion, or unsupported by substantial evidence, and because the DAB followed proper procedures, the Court will deny Wilkinson's motion for summary judgment and will grant the VA's motion.

An appropriate order follows.

BY THE COURT:

  /s/ Juan R. Sánchez
Juan R. Sánchez, C.J.